UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CASE NO. 3:03CR00057(JCH) |
| | : | |
| v. | : | |
| | : | |
| MILDRED MILLER | : | September 27, 2006 |

**GOVERNMENT'S MEMORANDUM IN AID
OF RE-SENTENCING ON BOOKER REMAND**

The Government respectfully submits this memorandum in aid of the re-sentencing of this case on remand from the United States Court of Appeals for the Second Circuit in conformity with *United States v. Booker,* 543 US 220 (2005) and *United States v. Fagans,* 406 F.3d 138 (2d Cir. 2005).

**I.     Background**

On March 7, 2003, Mildred Miller waived indictment and plead guilty to the one-count information charging her with wire fraud, in violation of 18 U.S.C. § 1343. In pleading to the information, she admitted that she had knowingly and wilfully participated in a scheme and artifice to defraud by submitting false and fraudulent invoices and documentation to American Commercial Finance Corporation (ACFC) and thereby fraudulently obtained over $4.7 million.

On November 6, 2003, this Court sentenced the defendant Miller to a term of sixty months. Miller filed a timely notice of appeal claiming several errors, and the case was heard in the Second Circuit Court of Appeals. On April 26, 2006, the Court of Appeals remanded the case to this Court for re-sentencing after finding that the sentence had been imposed prior to

*Booker* and that the defendant had preserved her objection to the Constitutionality of the Federal Sentencing Guidelines. However, it is important to note, that with regard to the guideline calculations, the Second Circuit found no error in this Court's findings and holdings.

## II.     Scope of a *Booker* Remand

In *Booker,* the Supreme Court held that the United States Sentencing Guidelines, as written, violate the Sixth Amendment principles articulated in *Blakely v. Washington*, 124 S. Ct. 2531 (2004). As a remedy, the Court severed and excised the statutory provision making the Guidelines mandatory, 18 U.S.C. §3553(b)(1), thus declaring the Guidelines "effectively advisory." *Booker*, 125 S. Ct. at 757. This ruling results in a system in which the sentencing court, while required to consider the Guidelines, may impose a sentence within the statutory maximum penalty for the offense of conviction. The sentence will be subject to appellate review for "reasonableness." *Id*. at 765-66.

Defendant correctly states that this remand requires a *de novo* sentencing hearing. To the extent that she desires to offer new information to the Court for consideration in determining the applicable guideline range and appropriate sentence, the Government has no objection. This does now, however, mean that the defendant is free to re-litigate the issues raised on appeal and rejected by the Second Circuit. *United States v. Goldstein*, 442 F.3d 777 (2d Cir. 2006). In this case, the Court ordered a remand pursuant to *United States v. Crosby*, 397 F.3d 103 (2d Cir. 2005), but adjudicated certain sentencing claims raised by the defendant. The Court affirmed a number of essentially factual determinations by the district court and instructed that "[o]n remand, the district court should continue to apply [the affirmed supervisory enhancement] when making a Guidelines determination." *Goldstein* at 786 ("The district court should continue to

apply [factual finding regarding defendant's receipt of funds] when making a Guidelines determination on remand.")  The fact that *Goldstein* involved a *Crosby* remand instead of a *Fagans* remand is of no moment, because the initial question posed on a *Crosby* remand is only whether the district court would have imposed a different sentence in light of the § 3553(a) factors and the *Goldstein* court's reference to "making a Guidelines determination on remand" necessarily refers to the potential second step of a *Crosby* remand, that is, a *de novo* resentencing made after a finding that the court would have imposed a nontrivially different sentence in light of *Booker*.  Thus, the directive in *Goldstein* indicates that the mandate rule does govern previously adjudicated sentencing claims, even if they involve factual issues as in *Goldstein*.

### III.  The Offense Conduct

Mildred Miller owned and operated A-1 Staffing/M.K.M. Professional Recruiters, in Hartford, Connecticut from 1996 to 2002.  The company operated as a temp agency providing short term employees to companies in the Hartford area.  To help finance her business, the defendant entered into an asset-based loan agreement with American Commercial Finance Corporation (ACFC), a private premium financial institution. ACFC was a subsidiary of HPSC, Inc., a Delaware corporation.

ACFC's business was to provide secured lines of credit and term loans to qualified borrowers.  As part of this business process, ACFC used a system known as factoring, whereby ACFC would advance money to a business businesses based on the businesses' accounts receivable.  In essence ACFC would finance a company, and in exchange, the customer entered an agreement to sell its accounts receivables to ACFC at a reduced cost. PSR ¶ 9.

During the defendant's business dealings with ACFC, she dealt with only one company

representative, Kevin Morrison. PSR ¶ 11. Mr. Morrison was the Executive Vice President and cofounder of ACFC. PSR ¶ 11. Because of his position in the company, Morrison had full control over account qualification, maintenance, and reporting. PSR ¶ 11. Despite the fact that defendant's business was in financial trouble and she was unable to repay ACFC monies owed, Morrison continued to advance money and between 1997 to 2002, approximately $4,765,898 was transferred from ACFC to the defendant's company by way of wire transfers. PSR ¶ 15.

To continue to receive funds while not performing on her debt, Miller provided false and fraudulent documents to ACFC claiming to have accounts which did not exist. Plea Letter Stipulation ¶ 8. In addition, the defendant forged numerous documents and presented them to ACFC as proof that she was refinancing in an effort to repay ACFC. PSR ¶ 17.

The specific transaction to which she pleaded involved a wire transfer on June 25, 2001 in which she caused ACFC to instruct Fleet Bank, Boston, Massachusetts, to wire transfer $10,323.27 from ACFC's checking account into the defendant's business checking account at Webster Bank in Hartford. Plea Letter Stipulation ¶ 11.

**IV.   The First Sentencing**

At the November 6, 2003 sentencing hearing, this Court applied the guidelines as follows:   The base offense level under USSG § 2F1.1(a) was 6; 13 points were added under §2F1.1(b)(1)(N) because the total loss exceeded $2,500,000; 2 points were added pursuant to §2F1.1(b)(2) because the offense involved more than minimal planning; and 4 points were added under §2F1(b)(8)(B) because the offense affected a financial institution, for an offense level of 25.  Three levels were deducted because of the defendant's acceptance of responsibility for her conduct, resulting in a total offense level of 22.  The defendant's extensive criminal history

resulted in her being determined to be a category IV, resulting in a sentencing range of 63-78 months. PSR ¶ 21-50. Since the statutory maximum for a violation of 18 U.S.C. § 1343 was 5 years (60 months) at the time of the offense, a sentence below the guideline range was required, resulting in the imposition of a 60 month sentence.

In addition, this court found that a downward departure for diminished mental capacity was inappropriate, finding that the defendant failed to prove "by a preponderance of the evidence...a causal link between her reduced capacity assumed in this case, and the commission of the charged offense." Transcript of Nov. 6, 2003 at 57-58.

On appeal the Second Circuit affirmed this finding.

V.      **Defendant's argument for a non-guideline sentence**

At re-sentencing, the defendant asks this Court to substantially reduce her sentence and permit her to serve it in the community. This request is not based on any substantial changes in the facts, but instead is principally based on her claim that her role in the offense was secondary relative to co-defendant Morrison's and her various health issues. It is submitted that these arguments do not merit a non-guideline sentence.

First, the Government disagrees with the characterization of her role in the offense as "passive" compared to Morrison's. In fact, Miller was the one who generated and provided false documentation and lied about obtaining other sources of funding to induce Morrison to continue to give her credit (money) which he knew she should not receive. Had Miller not begun her sexual liaison with Morrison, it is doubtful he ever would have committed a crime of this type, let alone magnitude. Miller on the other hand, had a history of dishonest conduct and would likely have victimized others for the money had Morrison not fallen under her spell.

Second, although she has significant health issues, they should not serve as a grounds for imposition of a reduced sentence. Apparently the medical problems have not been so serious as to prompt the Bureau of Prisons to transfer her to a medical facility such as Springfield, Missouri. The fact that she is being kept in Danbury and not at a medical facility suggests that the problems are such that they can be addressed in a non-hospital setting.

Third, to the degree that she is seeking a lower sentence based on her gambling addiction, as noted above, this matter is not subject to a *de novo* review since the Second Circuit has affirmed this Court's finding that a causal connection has not been established.

It is submitted that under the law as set forth in *Booker, Crosby,* and *Fagans*, Mildred Miller received a fair, just and reasonable sentence. Because the statutory maximum for wire fraud was five years at the time of the offense,[1] this Court was limited to sentencing her to a term of imprisonment below the Guidelines range. Moreover, the Guideline sentence was not unfairly disparate from co-defendant Morrison's. Morrison had no criminal history and had been lured into this criminal behavior by Miller. Miller, on the other hand, was operating a failing business and consistent with her criminal propensity reflected by her criminal history, would in all likelihood have sought other means, even if dishonest, to obtain the large sums of money she was spending. Blaming Morrison for her fraud is akin to a bank robber blaming the bank for not having guards or security cameras. It certainly should not give rise to a basis for a non-guideline sentence.

The sentence imposed in this case was appropriate and reasonable under 18 U.S.C.

---

[1] The penalty for wire fraud in violation of 18 U.S.C. § 1343 was increased to 20 years imprisonment in 2002.

§3553(a)(1). It clearly reflected the "nature and circumstances of the offense and the history and characteristics of the defendant." There is no question this case involved a staggering sum of money fraudulently obtained by a defendant who had a history of fraudulent and dishonest conduct. Second, the sentence clearly served several purposes of punishment as identified in §3553(a)(2). Specifically, as just stated, the sentence reflected the "seriousness of the offense," promoted respect for the law by punishing the defendant for her long term disobedience of the law, and provided just punishment for a crime of such magnitude §3553(a)(2)(A). Third, it appropriately provided adequate deterrence by sending a message to both the defendant and the public that such conduct would result in substantial punishment. §3553(a)(2)(B). Finally, it served to protect the public from her fraudulent schemes by separating her from society for a period of 60 months. §3553(a)(2)(C).

**VI.** **Conclusion**

For the foregoing reasons, it is submitted that this Court should re-impose a sentence of 60 months imprisonment on Mildred Miller and should decline to impose a non-guideline sentence.

Respectfully submitted,

KEVIN J. O'CONNOR
UNITED STATES ATTORNEY

By: _____
JAMES R. SMART
ASSISTANT UNITED STATES ATTORNEY
Federal Bar No. ct20982

For: JAMES G. GENCO
ASSISTANT UNITED STATES ATTORNEY
United States Attorney's Office
450 Main Street
Hartford, Connecticut  06103
Telephone (860) 947-1101
Federal Bar No. CT00360

**CERTIFICATION OF SERVICE**

      I hereby certify that a copy of the above and foregoing has been mailed, postage prepaid, on this 27th day of September, 2006 to:

Eileen F. Shapiro
45 Washington Street #160
Brooklyn, New York   11201


By: _____
      James R. Smart
      Assistant United States Attorney
For: James G. Genco
      Assistant United States Attorney