UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

UNITED STATES OF AMERICA           3:03-cr-00057 (JCH)

-v-

MILDRED MILLER

### DEFENDANT'S REPLY TO THE GOVERNMENT'S MEMORANDUM IN AID OF RE-SENTENCING

**A. The Mandate Rule does not Govern the Issues Raised on Re-sentencing.**

The narrow issue Ms. Miller argued to the Court of Appeals, which that Court determined adversely to her, is whether she was entitled to a downward departure under U.S.S.G. § 5K2.13 because of her diagnosed gambling addiction. The Government may be correct that the mandate rule precludes this Court from revisiting this issue on re-sentencing. However, Ms. Miller's request that this Court consider her psychiatric condition, among other § 3553(a) factors, in formulating a non-Guideline sentence pursuant to *Booker* and *Crosby*, raises a distinctly different issue.

At oral argument of the appeal, the panel expressed some uncertainty as to the scope of its ruling on remand should it find that the decision of this Court to deny a § 5K2.13 departure was not clearly erroneous. Accordingly, it requested

supplemental briefs addressing this issue. In the Government's post-argument brief, [Attachment I hereto] it asserted that the mandate rule only applied on a *de novo* remand "to the narrow question of whether the defendant is eligible for a downward departure under U.S.S.G. § 5K2.13." [Gov't Supplemental Brief at 1-2] The Government also agreed with Ms. Miller that "the district court would be free to consider the defendant's psychiatric condition under the rubric of § 3553(a) even if the defendant did not qualify for a guidelines departure under § 5K2.13."[1] [Gov't Supplemental Brief at 4].

This Court may consider Ms. Miller's psychiatric condition as a relevant factor under § 3553(a). The Government's present argument to the contrary is incorrect and should be disregarded.

**B. Ms. Miller's Deteriorating Health**

Ms. Miller's health is somewhat graver than the Government implies. She has just been informed that she has a suspicious ovarian mass and will be undergoing a hysterectomy. She has not received any other information, including when the surgery will take place or what post-operative treatment she may expect. Nor has she been given the opportunity to obtain a second opinion. Parenthetically,

---

[1] In this context, the Court's attention is respectfully directed to the original sentencing minutes, wherein it stated that "I see no reason not to accept the diagnosis of Dr. Couric that, in fact, this defendant suffers from an Axis I diagnosis of compulsive gambling." [Sentencing transcript at p. 56]

because of the length of her present sentence, Bureau of Prison regulations require that she be transported to all medical appointments in shackles.

**C. The Sentencing Disparity is Unjustified.**

In an effort to rebut Ms. Miller's argument that Mr. Morrison was at least as culpable as she, although he received a much shorter sentence, the Government goes so far as to imply that Mr. Morrison was an innocent but helpless victim lured into criminal conduct by a sophisticated *femme fatale*. Nothing could be further from the facts. Ms. Miller, a high school dropout, operated her business out of a one room office in a single-story building in West Hartford. She was the only employee. Mr. Morrison was the founder and executive vice president of a subdivision of a publicly traded national lending company. Based on appearances alone, Mr. Morrison could not have been deceived about the modest nature of Ms. Miller's operation. And, although the Government points to Ms. Miller as "the one who generated and provided false documentation," Mr. Morrison would have had to have falsified a great many documents himself to prevent ACFC's auditors from discovering that he was looting the company. The Government's assertion that he would never have engaged in criminal conduct had he not begun his liaison with Ms. Miller is pure speculation, given the ease with which he expertly managed to extract such a huge sum from ACFA without detection. Equally speculative is the Government's assertion that Ms. Miller would "likely have victimized others for

the money had Morrison not fallen under her spell." Ms. Miller's past offenses were petty in nature, generally involved small sums of money, and were clearly related to her untreated pathological gambling condition.

Finally, the Government misreads Ms. Miller's argument regarding § 3553(b)(6). She is not "blaming Morrison for her fraud." She has accepted full responsibility for her conduct and has made great strides towards rehabilitation. Rather, she is arguing that there is an unwarranted sentencing disparity between her and her co-defendant, even after accounting for the dissimilarity in their records.

## D. Conclusion

It is respectfully requested, in consideration of the factors discussed above and in her initial Re-Sentencing Memorandum, that Ms. Miller receive a non-guideline sentence based on the factors contained in 18 U.S.C. § 3553(a). It is further requested that because of her serious medical, condition including impending surgery and postoperative treatment, she be permitted to serve the remainder of her sentence under home confinement or some other community confinement.

Respectfully submitted,

Eileen Shapiro
Attorney for Defendant Mildred Miller
45 Washington Street #160

# ATTACHMENT I



**U.S. Department of Justice**

*United States Attorney*
*District of Connecticut*

| | |
|---|---|
| *Connecticut Financial Center* | *(203) 821-3700* |
| *157 Church Street* | *Fax (203) 773-5378* |
| *New Haven, Connecticut  06510* | *www.usdoj.gov/usao/ct* |

April 7, 2006

Roseann B. MacKechnie, Clerk of Court
United States Court of Appeals for the Second Circuit
Foley Square
New York, NY  10007

    Re:   **United States v. Miller, 04-0156-cr**

Dear Ms. MacKechnie:

    At oral argument on Thursday, March 23, 2006, the Court asked the parties to submit supplemental letter briefs, not to exceed 10 pages, regarding two questions: (1) Whether and to what extent the law of the case doctrine would be applicable in a *de novo* sentencing remand in this case pursuant to *United States v. Fagans*, 406 F.3d 138 (2d Cir. 2005), and (2) Whether the Court should reach the first question in the present appeal, given the procedural posture of this case. The Court directed the Government to file its brief by the close of business on Friday, March 7, 2006. Taking those questions in reverse order, the Government respectfully submits this brief, explaining its view (1) that the Court should not reach this question, since the law of the case doctrine is not presently in dispute, and very likely would not come into dispute on remand, and (2) that the portion of the law of the case doctrine known as the "mandate rule" (subject to the standard exceptions of an intervening change of law or fact) would apply in any *de novo* remand to the narrow

question of whether the defendant is eligible for a downward departure under U.S.S.G. § 5K2.13 based on the existing factual record.

I.  **There Is No Need for the Court To Issue an Advisory Opinion Regarding the Law of the Case Doctrine in This Case**

As an initial matter, there is no need for this Court to address the law of the case doctrine, because it is not necessary for resolution of the questions presented in this appeal. The primary question under review is the district court's decision not to depart downward under U.S.S.G. § 5K2.13 based on the defendant's claimed gambling addiction. In reaching that decision, the district court did not rely on any previous determination in that regard. Accordingly, there is presently no claim that the sentence under review was based in any way on the law of the case doctrine.

The only context in which this Court could address the law of the case doctrine would be in an advisory opinion to the district court, in order to define how that doctrine might or might not apply in any remand, depending on how the district court might choose to proceed. Yet there are a multitude of reasons why this issue might never arise. For one thing, there is no reason to believe that the district court would change its mind about the defendant's eligibility under § 5K2.13 based on the facts in the record. The district court expressed no hesitancy at the prior two sentencing hearings, and consistently set forth its view that the defendant was not eligible based on the psychiatric reports and other information in the record. Because there is no

reason to believe that the district court might desire to reach a different conclusion, much less that it would refrain from doing so because of the law of the case doctrine, any opinion by this Court would be purely advisory.

There are additional reasons why the law of the case doctrine might not come into play. As the Government acknowledged at oral argument, the defendant would be free in a *de novo* resentencing to offer new evidence regarding any number of issues, including her psychiatric condition. This is because, in a *de novo* sentencing, a district court is obliged to "sentence the defendant as he stands before the court on the day of sentencing." *United States v. Bryson*, 229 F.3d 425, 426 (2d Cir. 2000) (per curiam); *see also Werber v. United States*, 149 F.3d 172, 178 (2d Cir. 1998). If the district judge believed that newly available facts warranted a materially different conclusion on the § 5K2.13 issue, she would be entitled to revisit her earlier decision. That is because, as discussed below, an intervening change of fact or law constitutes an established exception to the "mandate rule" branch of the law of the case doctrine. Moreover, the Court has liberally construed changes in fact to include not only the occurrence of new facts, but also newly available evidence regarding facts that pre-existed the original sentencing. *See, e.g., United States v. Bryce*, 287 F.3d 249, 254-55 (2d Cir. 2002) (holding that valid exception to mandate rule justified district court's upward departure, on limited sentencing remand, of newly developed evidence that defendant had committed an earlier murder). Thus, it would appear that

3

In short, there is no way of knowing whether the law of the case doctrine will have any impact on this case if the Court were to remand for *de novo* resentencing. This Court has explained that "[o]ur failure to address a question that is not necessary to the outcome of a case is simply a wise exercise of our discretion." *United States v. Schultz*, 333 F.3d 393, 407 (2d Cir. 2003); *id.* (citing *United States v. United States Gypsum Co.*, 333 U.S. 364, 402 (1948) (Frankfurter, J., concurring in part) ("Deliberate dicta, I had supposed, should be deliberately avoided.")); *see also, e.g.*, *United States v. Holguin*, 436 F.3d 111, 116, 118 (2d Cir. 2006) (declining to reach two questions of statutory interpretation not directly presented by appeal). *See generally United States v. Leon*, 203 F.3d 162, 164 (2d Cir. 2000) (discussing federal courts' obligation to limit decisions to those resolving actual cases and controversies). For these reasons, the Government respectfully submits that there is no need for the Court to address the law of the case doctrine in the present appeal.

## II.   The Mandate Rule Precludes Relitigation on Remand of Any Issue Expressly Decided by this Court, Absent Changes of Fact or Law

If the Court decides to reach the law of the case question, the Government respectfully submits that the "mandate rule" would preclude the district court, on a *de novo* remand for resentencing, from revisiting the narrow question of whether the present record renders the defendant eligible for a departure under § 5K2.13 – assuming that this Court chooses to resolve that question in the present appeal.

The law of the case doctrine has "two branches." *United States v. Quintieri*, 306 F.3d 1217, 1225 (2d Cir. 2002). "The first requires a trial court to follow an appellate court's previous ruling on an issue in the same case. This is the so-called 'mandate rule.'" *Id.* (citation omitted). "The mandate rule 'compels compliance on remand with the dictates of the superior court and foreclose relitigation of issues expressly or impliedly decided by the appellate court.'" *United States v. Bryce*, 287 F.3d 249, 252 (2d Cir. 2002) (quoting *United States v. Zvi*, 242 F.3d 89, 95 (2d Cir. 2001) (quoting, in turn, *United States v. Bell*, 5 F.3d 64, 66 (4th Cir. 1993))) (emphasis deleted).

"The second and more flexible branch is implicated when a court reconsiders its own ruling on an issue *in the absence of an intervening ruling on the issue by a higher court*. It holds 'that when a court has ruled on an issue, that decision should generally be adhered to by that court in subsequent stages in the same case,' unless 'cogent' and 'compelling' reasons militate otherwise.'" *Quintieri*, 306 F.3d at 1225 (quoting *United States v. Uccio*, 940 F.2d 753, 757 (2d Cir. 1991), and *United States v. Tenzer*, 213 F.3d 34, 39 (2d Cir. 2000)) (citations omitted) (emphasis added). "The major grounds justifying reconsideration are an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." *Tenzer*, 213 F.3d at 39 (citations and internal quotation marks omitted). "[T]his branch of the doctrine, while it informs the court's discretion, 'does

not limit the tribunal's power.'" *United States v. Uccio*, 940 F.2d 753, 758 (2d Cir. 1991) (quoting *Arizona v. California*, 460 U.S. 605, 618 (1983)). A court may therefore revisit an earlier, unreviewed, decision of its own so long as it has a valid reason for doing so, and provides the opposing party "sufficient notice and an opportunity to be heard." *Uccio*, 940 F.2d at 759 (finding that district court's realization that it had relied on faulty legal interpretation of a sentencing guideline was valid reason for revisiting earlier ruling).

The fact that resentencing is labeled *"de novo"* in the *Fagans* context should not alter this analysis, any more than it did in *Quintieri*. In *Quintieri*, this Court had to determine whether its previous order remanding a case for resentencing was *"de novo"* or "limited." In framing that dichotomy, the Court made clear that one category of claims – those previously adjudicated by this Court – fell outside the district court's authority regardless of whether the remand was *de novo* or limited. Specifically, this Court explained that if the remand had not been limited to the correction of a specific issue,

> the district court was required to resentence [the defendant] *de novo* and we must hear on appeal every issue raised at resentencing *so long as we have not previously decided it.*

306 F.3d at 1222 (emphasis added). If, on the other hand, the remand was limited, then the district court would have been barred from considering not only those issues "previously decided" by this Court, but also issues that the defendant "waived" by

7

failing to raise them earlier. *Id.; see also id.* at 1225 (explaining that mandate rule "ordinarily forecloses relitigation of all issues previously waived by the defendant *or decided by the appellate court*," but that a defendant may revive previously waived issues in a remand for *de novo* resentencing) (emphasis added).

At oral argument, the Court inquired as to whether a ruling that a factual finding is not clearly erroneous should have the same preclusive effect as a legal interpretation of a guideline. In cases where a factual finding is affirmed as not clearly erroneous, there is still the possibility that some other (contrary) factual finding might still fall within the range of permissible decisions that are similarly not "clearly erroneous" in light of the record. In those circumstances, the Court inquired why a district court should not be permitted to adopt a revised finding on remand, since it is not necessarily precluded as a matter of logic by the appellate court's finding of "no clear error."

The reason why further reconsideration should be precluded in this situation, the Government submits, lies with the concept of finality, which is the core concept animating the law of the case doctrine. As this Court has explained:

> Very high among the interests in our jurisprudential system is that of finality of judgments. It has become almost a commonplace to say that litigation must end somewhere, and we reiterate our firm belief that courts should not encourage the reopening of final judgments or casually permit the relitigation of litigated issues out of a friendliness to claims of unfortunate failures to put in one's best case.

8

review whether those fatual conclusions find support in the record.

Finally, this conclusion is most consistent with statements by this Court in the *Fagans* context. For example, in *United States v. Fuller*, 426 F.3d 556, 562 (2d Cir. 2005), this Court reviewed a number of sentencing claims raised by the defendant, and then remanded for a *de novo* resentencing pursuant to *Fagans*. The Court noted that (as in the present case) both parties had requested the Court to reach the contested issues. In a footnote to this discussion, the Court explained that its "'disposing of [Fuller's] non-Sixth Amendment claims prior to remand forecloses future challenges to his sentence on these grounds, though it does not foreclose reasonableness review of [Fuller's] sentence on other grounds.'" *Fuller*, 426 F.3d at 562 n.5 (quoting *United States v. Weisser*, 417 F.3d 336, 346 (2d Cir. 2005)).

\* \* \* \* \*

I respectfully request that a copy of this letter be circulated to each panel member (Circuit Judges Straub and Sack, and District Judge Trager).

Very truly yours,

KEVIN J. O'CONNOR
UNITED STATES ATTORNEY

WILLIAM J. NARDINI
ASSISTANT U.S. ATTORNEY

cc:   Eileen Shapiro, Esq., counsel for defendant

October 10, 2006                              Brooklyn, NY 11201


UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

UNITED STATES OF AMERICA                     3:03-cr-00057 (JCH)

-v-

MILDRED MILLER

_____

AFFIDAVIT OF SERVICE

Eileen F. Shapiro, an attorney admitted to practice before the courts of the State of New York and this honorable Court, hereby affirms under penalty of perjury:

1. I am not a party to this action, am over 18 years of age and reside in Kings County, NY.

2. On September 15, 2006, I served a copy of Defendant's Sentencing Memorandum on:

>   James G. Genco, Esq.
>   Office of the United States Attorney
>   450 Main Street, Room 328
>   Hartford, CT 06103

3. Said service was made by placing same in a postal box maintained by the United States Postal Service for the purpose of receiving first class mail.

                              Affirmed _____
                                       Eileen F. Shapiro, Esq.

October 10, 2006

# Eileen F. Shapiro

Attorney at Law

45 Washington Street #160
Brooklyn, NY 11201
(718) 254-9049   (718) 923-0662
elleenshapiro@eurekamail.net

October 10, 2006

Clerk of Court
District of Connecticut
United States Courthouse
915 Laffeyette Boulevard
Bridgeport, CT 06604

Re: United States v. Mildred Miller – 03-Cr-00057

Dear Sir:

Enclosed please find for filing Defendant's Reply to the Government's Memorandum in Aid of Re-Sentencing in the above titled matter. If there is any difficulty, please let me know immediately. Note that because I am proceeding pro hac vice by order of Hon. Janet C. Hall, I do not participate in electronic filing in this district.

Thank you in advance for your kind attention to this matter.

Sincerely yours,

Eileen Shapiro, Esq.

Encl.
Cc: AUSA James C. Genco